**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GLORIA J. WILLINGHAM,

Plaintiff,

v.

JOHN ASHCROFT,

Defendant.

Civil Action No.  02-1972
(ESH/JMF)

**MEMORANDUM ORDER**

This case was referred to me by Judge Huvelle for the resolution of discovery disputes.

Currently pending before me is the issue of whether defendant must produce certain documents,

claimed to be privileged and submitted for *in camera* review, to plaintiff.  For the reasons stated

herein and in accordance with this Memorandum Order, defendant must produce to plaintiff

several of the documents submitted for *in camera* review.

I.      BACKGROUND

Plaintiff, an attorney who was an Attorney-Advisor in the Drug Enforcement

Administration ("DEA"), an agency within the Department of Justice ("DOJ"), claims that her

termination from that position was motivated by a retaliatory and discriminatory animus.  The

defendant, the Attorney General ("AG"), will defend on the grounds that an investigation of

plaintiff's behavior on the night she was arrested in Fairfax County for assault and statements she

made thereafter justified her removal from federal service, even though she was acquitted of the charges that led to her arrest.

On January 25, 2005, I resolved several discovery disputes.  I also ordered defendant to produce, for the court's *in camera* review, all documents claimed to be privileged.  Defendant has complied with that Order, and I have reviewed all of the allegedly privileged documents that plaintiff claims ought to be produced.[1]  The documents fall into three categories: (1) documents that contain information outside the scope of discovery; (2) documents that can fairly be said to have been prepared in anticipation of litigation and also constitute opinion work product because they reflect an attorney's "mental impressions, conclusions, opinions, or legal theories;" and (3) documents prepared for other purposes and not protected by any privilege.

## II.   DEFENDANT'S OBJECTIONS TO PRODUCING CERTAIN DOCUMENTS

### A.   Outside the Scope of Discovery

As I stated in a previous Opinion in this case, the discovery restrictions originally set by Judge Huvelle are entirely reasonable, and discovery will remain limited to disciplinary actions taken against DEA personnel between February 1998 and November 2001. Willingham v. Ashcroft, 226 F.R.D. 57, 60-62 (D.D.C. 2005).  Two documents submitted for *in camera* review contain information outside the scope of discovery.  The document bearing Bates numbers DEA 0010-0026 contains only non-discoverable information, and defendant will not be required to produce it.  The majority of the other document (numbered DEA 0696-0730) also contains information outside the scope of discovery, except for three entries that pertain to disciplinary

---

[1] Out of an abundance of caution, defendant also submitted documents claimed to be privileged to which plaintiff never objected.  Because no objections were lodged, I did not review these documents.

actions taken against plaintiff within the relevant time period.  Thus, defendant need not produce the majority of the document because it is irrelevant, and the three relevant entries will be addressed later in this memorandum.

### B.     The Work-Product Privilege

#### 1.     Overview

The work-product privilege exists because "it is essential [to our adversarial system] that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Hickman v. Taylor, 329 U.S. 495, 510-11 (1947).  A lawyer's work product is reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways. . . . Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten.  An attorney's thoughts, heretofore inviolate, would not be his own." Id. at 511.

Because of these important interests, Federal Rule of Civil Procedure 26(b)(3) provides that materials prepared in anticipation of litigation or for trial by an attorney or a party are protected from disclosure, and they may be subject to discovery only upon a showing of substantial need and undue hardship. Fed. R. Civ. P. 26(b)(3).  Moreover, even if the work-product privilege yields to a showing of need, the court must still protect the "mental impressions, conclusions, opinions, or legal theories of an attorney." Id. See also Tax Analysts v. Internal Revenue Serv., 117 F.3d 607, 619 (D.C. Cir. 1997).  These materials, known as opinion work product, "are entitled to special protection and require a stronger showing of necessity to justify release . . . although the precise contours of this showing have not been resolved." Byers

3

v. Burleson, 100 F.R.D. 436, 439 (D.D.C. 1983) (citing Fed. R. Civ. P. 26(b)(3) and Upjohn Co. v. United States, 449 U.S. 383, 400-01 (1981)).  See also In re Sealed Case, 856 F.2d 268 (D.C. Cir. 1988).

2.     Documents Prepared in Anticipation of Litigation or for Trial

In reviewing documents claimed to be protected by the work-product privilege, the court must determine "whether, in light of the nature of the document or the factual situation in a particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." Equal Employment Opportunity Comm'n v. Lutheran Soc. Servs., 186 F.3d 959, 968 (D.C. Cir. 1999) (emphasis added). See also Nesse v. Pittman, 202 F.R.D. 344, 349 (quoting In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998)).  As I have previously noted, "the concept of 'in anticipation of litigation' contains two related, but nevertheless distinct, concepts.  One is temporal.  The other is motivational." Athridge v. Aetna Cas. & Sur. Co., 184 F.R.D. 181, 189 (D.D.C. 1998) (quoting Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine 314).

To be protected by the work-product doctrine, a document must have been created for use at trial or because a lawyer or party reasonably anticipated that specific litigation would occur and prepared the document to advance the party's interest in the successful resolution of that litigation.  Motivation is key.  In ways that cannot often be foreseen when they are created, documents may prove useful in litigation because they record an event or memorialize an occurrence.  But, their creation at a time when litigation was anticipated does not automatically render them privileged.  The purpose of preparing for the anticipated litigation is critical, lest the rule be interpreted to protect everything a lawyer or party does when litigation is anticipated even

though the lawyer or party did not create the document to advance the client's interest in the litigation.

Hence, if documents "would have been created in essentially similar form irrespective of the litigation[,] . . . it [cannot] fairly be said that they were created 'because of' actual or impending litigation." United States v. Adlman, 134 F.3d 1194, 1202–03 (citation omitted). See also Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc. 690 N.W.2d 38, 48 (Iowa 2004) (citing Adlman). Cf. In re Grand Jury Subpoena, 357 F.3d 900, 909-10 (9th Cir. 2004) (noting that, if certain documents were prepared for both litigation and non-litigation purposes and " the two purposes cannot be discretely separated from the factual nexus as a whole," the documents may be protected under the work-product doctrine); Jumpsport, Inc. v. Jumpking, Inc., 213 F.R.D. 329,347-48 (N.D. Cal. 2003) (refining the "because of" standard articulated in Adlman to protect documents when litigation was a substantial factor in their creation and disclosure would offend the policies animating the work-product doctrine). As the advisory committee notes to Rule 26 point out, "materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes" are not protected. Fed. R. Civ. P. 26(b), advisory committee note (1970 amendment). See also Hertzberg v. Veneman, 273 F. Supp. 2d 67, 78 (D.D.C. 2003). To conclude otherwise would be to ignore the motivational dimension of the work-product doctrine.

In this case, in early 1999, the DEA became aware that plaintiff might litigate the decision to place her on indefinite suspension. Specifically, on March 18, 1999, plaintiff appealed the agency's decision to place her on indefinite suspension to the Merit Systems Protection Board ("MSPB"). On May 7, 1999, plaintiff filed an administrative complaint based

on her indefinite suspension.  While neither of these actions initiated judicial proceedings against the DEA, the Special Masters' Guidelines for the Resolution of Privilege Claims rightly define "litigation" to include "a proceeding in court or administrative tribunal in which the parties have the right to cross-examine witnesses or to subject an opposing party's presentation of proof to equivalent disputation."  Epstein, supra, at 504 (quoting the special masters Paul R. Rice and Geoffrey C. Hazard, Jr.).  In other words, to constitute "litigation," the proceeding must be adversarial. Id.  See also In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 924 (8th Cir. 1997) (stating that courts have applied the work-product doctrine in a variety of legal contexts and that the "essential element of each case" was that "the attorney was preparing for or anticipating some sort of adversarial proceeding involving his or her client").

        When plaintiff challenged the DEA's decision to discipline her by appealing its decision to the MSPB, she initiated an adversarial action against the agency.  The adversarial proceedings continued when she filed her administrative complaint, which, under Title VII of the Civil Rights Act of 1964, is a jurisdictional prerequisite to suit against an agency of the United States.  As I have previously indicated, reasonable lawyers know that, if the EEO process results in a determination favorable to the agency, plaintiff will likely bring litigation in the District Court. McPeek v. Ashcroft, 202 F.R.D. 332, 339 (D.D.C. 2001).  In addition, "if anonymous complaints of discrimination raise the sufficient potential of litigation to make a lawyer's work investigating those complaints 'in anticipation of litigation,' see Lutheran Social Services, 186 F.3d at 959, a lawyer's work responding to a specific claim of retaliation filed with an agency EEO office has to be 'in anticipation of litigation.'" McPeek, 202 F.R.D. at 339.   Thus, all of the documents created because of or in preparation for a potential challenge to plaintiff's indefinite suspension,

either to the MSPB or through EEO proceedings, were prepared in reasonable anticipation of

litigation.  These materials include documents with the following Bates numbers: DEA 1790,

DEA 1854-1855, DEA 1862-1866, DEA 1867-1871, DEA 1872-1877, DEA 1979-2081, DEA

2096, DEA 2108, DEA 2132, DEA 2137-2139, DEA 2193, and the redacted portions of DEA

2102, DEA 2133, DEA 2136, DEA 2142, and DEA 2143.

     In each of these instances, the documents that were prepared in anticipation of litigation

clearly reflect the DEA's or its attorneys' mental processes because they contain counsel's

analysis of the merits of the agency's imposition of indefinite suspension, their assessment of the

importance of the case from an agency-wide point of view, or their thoughts regarding possible

settlement.  Thus, these materials constitute opinion work product because they reflect the DEA's

or the attorneys' "mental impressions, conclusions, opinions, or legal theories," and they are

entitled to almost absolute protection. See Fed. R. Civ. P. 26(b)(3).  Therefore, in order to justify

the production of these documents, plaintiff would have to make a stronger showing of need than

is normally required of ordinary work product. See Byers, 100 F.R.D. at 439.  After reviewing

the documents, I am confident that plaintiff can make no showing that would be strong enough to

justify the release of the DEA attorneys' pure legal analysis of this case, and these documents

need not be produced.  Indeed, she has made no such showing in Plaintiff's Second Motion to

Compel the Production of Documents.  To rule otherwise and order production of the documents

would violate a cornerstone of our adversarial system: the ability of an attorney to prepare his

case "with a certain degree of privacy, free from unnecessary intrusion by opposing parties and

their counsel." See Hickman, 329 U.S. at 510-11.  Accordingly, defendant need not produce

these materials.

3.      Documents Created for Other Purposes

As indicated above, documents created for a purpose other than litigation are not

protected by the work-product doctrine.  In this case, several of the documents submitted by

defendant fall within this category.  For example, DEA 0696-0730 is a synopsis of adverse

actions taken by the DEA against attorneys.  It was drafted by the Office of Attorney Personnel

Management for personnel purposes and, without a declaration indicating that these entries were

crafted in anticipation of litigation, they cannot fairly be read to have been created for that

purpose.[2]  Indeed, the document would have been created in "essentially similar form irrespective

of the litigation."  See Adlman, 134 F.3d at 1202-03.  Accordingly, defendant must produce the

three entries that are within the scope of discovery and that appear in this document (98-1, DEA;

98-2, DEA; and 99-2 DEA).

The same reasoning applies to several other documents.  DEA 1793 is an email between

and among counsel.  But, except for the last two sentences of the communication,[3] there is no

indication that it was prepared in anticipation of litigation, and its contents simply report publicly

known facts.  Similarly, there is no indication that DEA 1800-1801 (duplicated at 2099-2100)

and DEA 1802 were prepared in anticipation of litigation.  Instead, these documents appear to

have been drafted in the ordinary course of business, and they factually recount an attorney's

---

[2]  Even if it were deemed to have been created in anticipation of litigation, the document does nothing more than briefly summarize certain personnel actions, and disclosure of this material will reveal nothing about the legal or tactical strategy of the DEA and its counsel. Indeed, if the document was found to have been prepared in anticipation of litigation, the material would be ordinary work product, and plaintiff would probably be able to make a showing of substantial need because the entries concern personnel actions taken against plaintiff herself.

[3]  These two lines may be redacted before the document is produced to plaintiff.

understanding of what happened on the night of plaintiff's arrest and how he was notified of the

incident.  The same is true of DEA 2160, in which an attorney factually recounts a conversation

with plaintiff, prior to her arrest, about various work-related issues and her intent to file an EEO

suit against the office.  Because there is no indication that any of these documents was prepared

for trial or in anticipation of litigation, none of the documents is protected by the work-product

doctrine.  Unless they are otherwise privileged, <u>see</u> discussion of the attorney-client privilege,

<u>infra</u>, the court will order their production.

         4.     <u>Documents Claimed to Be Privileged by Virtue of Their Status as Attachments</u>

The document bearing Bates numbers DEA 1872-1877 is a memorandum from Bettie

Goldman (Associate Chief Counsel, Civil Litigation Section) to William Simpkins (Deputy

Chief Inspector for the Office of Professional Responsibility ("OPR")) regarding a request for

legal opinion.  This entire document clearly reflects an attorney's legal analysis and is pure

opinion work product.  For the reasons discussed above, it need not be produced.

Defendant has also claimed that three documents, DEA 1878-1879 (duplicated at 1929-

1930), DEA 1880-1917 (duplicated at DEA 1931-1967), and DEA 1918-1928 (duplicated at

DEA 1968-1978), all of which are attached to DEA 1872-1877, are protected by the attorney

work-product doctrine.  In its privilege log, which was filed on the public docket, defendant

indicated that the first two attachments constitute a memorandum from Charles Walden

(Associate Chief Counsel for Administrative Law) to Simpkins regarding the report of plaintiff's

arrest.  The other attachment is the OPR Investigative Report prepared by an OPR Inspector

regarding an interview of Walden, dated December 15, 1998.

In some instances, courts have found that an attorney's compilation of various documents, each of which is itself a proper subject of discovery, constitutes an attorney's opinion work product subject to protection under Rule 26(b)(3).  Indeed, when counsel has selected and distilled a portion of documents that have already been produced in discovery for certain purposes, such as to prepare her client for a deposition, courts have found that the identification of those documents would reveal counsel's mental impressions and legal opinions.  See Sporck v. Peil, 759 F.2d 312, 316-17 (3rd Cir. 1985); James Julian, Inc. v. Raytheon Co., 93 F.R.D. 138, 144 (D. Del. 1982).  Other courts, however, are critical of this line of reasoning.  The First Circuit, for example, concluded that such an analysis "is flawed because it assumes that the revelatory nature of the sought-after information is, in itself, sufficient to cloak the information with the heightened protection of opinion work product.  That is simply not the case; much depends on whether the fruits of the screening would soon be revealed in any event." In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1018 (1st Cir. 1988).

Although, in this case, an attorney compiled certain documents not to prepare a client for a deposition but to formulate and support a legal opinion, I will use the same analytical framework to determine whether these attachments are protected by the work-product doctrine. It is certainly true that, in preparing his legal opinion, Associate Chief Counsel Goldman selected certain documents to review and use as support for his legal conclusions.  However, this is not a case involving the selection and reliance upon a few documents, from a sea of thousands of documents produced in discovery, and it is no secret that the documents upon which Goldman relied are important to the litigation.  Compare Sporck, 759 F.2d at 316-17, and James Julian, 93 F.R.D.at 144, with Washington Bancorporation v. Said, 145 F.R.D. 274, 277 (D.D.C. 1992), and

In re San Juan, 859 F.2d at 1018. Even more importantly, via the privilege log, counsel has already identified the documents upon which Goldman relied in drafting his legal memorandum. Accordingly, ordering production of the supportive documents, even though they were attachments to a document that is clearly privileged, will not violate the work-product doctrine. Indeed, if attaching a non-privileged document to a privileged one would automatically prevent it from being discoverable, the liberal discovery contemplated by the federal rules would be obviated.

With that in mind, I have reviewed the attachments individually, without regard to their status as attachments, and have determined that none of them is independently protected by the work-product privilege. Simply put, there is no indication that DEA 1878-1879 (duplicated at DEA 1929-1930) or DEA 1918-1928 (duplicated at 1968-1978) was prepared in anticipation of litigation. Instead, these documents appear to have been drafted in the ordinary course of business, and they factually recount an attorney's understanding of what happened on the night of plaintiff's arrest and how he was notified of the incident. As for the document bearing the Bates numbers DEA 1880-1917 (duplicated at DEA 1931-1967), this document includes Fairfax County Police Department's field investigation report and summons and Fairfax County Police Department's report of a hit and run accident involving plaintiff . Because it was not created in anticipation of litigation by the defendant or its attorney, it is not protected by the work-product doctrine either in its own right or as an attachment to a privileged document. Accordingly, these documents must be produced unless they are protected by the attorney-client privilege. See discussion, infra.

C.     The Attorney-Client Privilege

11

In this Circuit, "the attorney-client privilege is narrowly circumscribed to shield from disclosure only those communications from a client to an attorney made in confidence and for the purpose of securing legal advice." <u>Athridge v. Aetna Cas. & Sur. Co.</u>, 184 F.R.D. 200, 204 (D.D.C. 1998). <u>See also</u> <u>Tax Analysts</u>, 117 F.3d at 618; <u>In re Sealed Case</u>, 737 F.2d 94, 98 (D.C. Cir. 1984).  The privilege extends to "communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'" <u>Tax Analysts</u>, 117 F.3d at 618 (quoting <u>In re Sealed Case</u>, 737 F.2d at 99 and citing <u>Mead Data Central, Inc. v. United States Dep't of Air Force</u>, 566 F.2d 242, 254 (D.C. Cir.1977)).  In the governmental context, the client may be the agency and the attorney may be an agency lawyer. <u>Id.</u>

The documents bearing the Bates numbers DEA 1931-1967 were authored by the Fairfax County Police Department, a third party to this action.  Accordingly, the documents are not protected by the attorney-client privilege.  As for the documents bearing the Bates numbers DEA 2160, DEA 1878-1879 (duplicated at 1929-1930), DEA 1880-1917 (duplicated at 1931-1967), DEA 1918-1928 (duplicated at 1968-1978), and the three relevant entries within DEA 0696-0730, none of these documents reveals confidential communications by the DEA to DEA attorneys, and the privilege is inapplicable.  As for DEA 1793, only the last two sentences, previously identified for redaction, reveal confidential communications from the DEA's OPR to DEA attorneys, and those portions shall not be produced.

It should be noted that the court did not assess whether DEA 0696-0730, DEA 1800-1801 (duplicated at 2099-2100), and DEA 1802 are protected by the attorney-client privilege because that privilege was not claimed as to these documents.

## III.    CONCLUSION

12

The following chart summarizes the documents that were submitted for *in camera* review:

| CATEGORY | DOCUMENTS | RULING |
|---|---|---|
| Information outside the scope of discovery | DEA 0010-0026<br>DEA 0696-0730 (except for 3 entries regarding disciplinary actions taken against plaintiff, which are discussed below) | Defendant need not produce the documents |
| Opinion work product<br><br>Whether the attorney-client privilege applies is a moot issue because documents protected from disclosure by work-product doctrine | DEA 1790<br>DEA 1854-1855<br>DEA 1862-1866<br>DEA 1867-1871<br>DEA 1872-1877<br>DEA 1979-2081<br>DEA 2096<br>DEA 2108<br>DEA 2132<br>DEA 2137-2139<br>DEA 2193<br>DEA 2102 (redacted portion)<br>DEA 2133 (redacted portion)<br>DEA 2136 (redacted portion)<br>DEA 2142 (redacted portion)<br>DEA 2143 (redacted portion) | Defendant need not produce the documents because plaintiff has not and cannot make stronger showing of necessity to justify release |
| Materials not protected by the work-product doctrine or attorney-client privilege | DEA 1793 (except for redaction)<br>DEA 1800-1801 (DEA 2099-2100)<br>DEA 1802<br>DEA 1878-1879 (DEA 1929-1930)<br>DEA 1880-1917 (DEA 1931-1967)<br>DEA 1918-1928 (DEA 1968-1978)<br>DEA 2160<br>3 entries regarding disciplinary actions taken against plaintiff, contained within DEA 0696-0730 | Defendant must produce these documents |

Thus, within 10 days of this Memorandum Order, defendant must produce to plaintiff

documents bearing the Bates numbers DEA 1793 (except for the last two sentences), DEA 1800-1801 (duplicated at DEA 2099-2100), DEA 1802, DEA 1878-1879 (duplicated at DEA 1929-1930), DEA 1880-1917 (duplicated at DEA 1931-1967), DEA 1918-1928 (duplicated at DEA 1968-1978), DEA 2160, and the three relevant entries regarding disciplinary actions taken against plaintiff, contained within DEA 0696-0730.

**SO ORDERED.**

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: